**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**NEUBERT AERO CORPORATION,**

    **Plaintiff,**

v.                                              **Case No: 5:20-cv-45-JSM-PRL**

**STARSTONE NATIONAL**
**INSURANCE COMPANY and**
**LONDON AVIATION**
**UNDERWRITERS, INC.**

    **Defendants.**

___

**REPORT AND RECOMMENDATION[1]**

Plaintiff seeks declaratory relief that damages to its airplane are covered under an aircraft liability policy issued by Defendants.[2] The parties have filed cross-motions for summary judgment regarding coverage (Docs. 107, 130). For the reasons discussed below, summary judgment should be granted in favor of Defendants because Plaintiff failed to satisfy the pilot requirements under the insurance policy, and thus, there is no coverage for the damages to the airplane.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Plaintiff's claim for declaratory judgment against Starstone National Insurance Company and London Aviation Underwriters, Inc. is all that remains. The Court previously dismissed Plaintiff's claims against Southwest Aviation Group of Arizona, Inc. for breach of fiduciary duty and negligence. (Doc. 93).

I.  FACTUAL BACKGROUND

The underlying facts are not in dispute. This action arises out of an off-field emergency landing of a N1ZR 1977 Cessna T337GP ("the Aircraft") while Timothy W. Neubert, the President of Neubert Aero Corporation (the plaintiff), was conducting a flight from the Memphis International Airport to the Brooksville-Tampa Bay Regional Airport on November 8, 2018 ("the Incident"). Mr. Neubert was the only occupant and pilot of the Aircraft at the time of the Incident. Neubert's pilot certificate is for "airplane single engine land, instrument airplane" and the Aircraft is a multiengine airplane. Doc. 107-1 at 26. Just over two months prior to the Incident, Neubert received an endorsement in his pilot logbook from Certified Flight Instructor, Nathan Gary, certifying that Neubert "received training to qualify for solo flying" and that he "meets the applicable requirements of 61.31(d)2 and is proficient to make solo flights in a C-337P." (Neubert Dec. at ¶ 10, Exhibit C).

The Defendants, London Aviation Underwriters, Inc. ("LAU"), as manager and underwriter for StarStone National Insurance Company ("StarStone"), provided to Plaintiff an Aviation Insurance Policy (Policy No. SAV100311200), effective from March 22, 2018 to March 22, 2019 ("the Policy").  (Doc. 107-1, Affidavit of Jeffrey T. Sutton at ¶4).[3] Plaintiff filed a claim under the Policy for damages the Aircraft sustained as a result of the Incident.

The Policy states, in pertinent part:

**APPROVED PILOTS:** The above coverages do not apply while N1ZR is operated by other than the following:

    **A. Named Pilot(s):**
    • Timothy W. Neubert
    **B. Additional Pilot Clause:** any Pilot, aged between 25 and 65, having a Private (or better) Pilot Certificate with Multiengine Land and Instrument Ratings who has flown a minimum of 1000 total flying hours

---

[3] A copy of the Policy is attached at Doc. 107-1 at 7-25.

> as Pilot In Command, 250 of which shall have been Multiengine Land hours, including 25 hours in a Cessna T337GP, and who has had no accidents, incidents, violations, or suspensions within the past five years, and who has the Insured's full approval and consent. All such pilots to have successfully completed, within 24 calendar months preceding the intended flight, initial or recurrent training, in the same make and model being flown, with a school acceptable to the company.

Furthermore, all pilots must be in compliance with the requirements of both FAR 61.56 (Flight Review) and FAR 61.23 (Medical Certificates: Requirement and Duration), and must be certificated for the make and model being flown, and must be currently rated for the flight involved, unless otherwise stated.

\* \* \*

**SPECIAL CONDITION(S)**: Prior to solo in N1ZR, Timothy Neubert must have obtained a multiengine rating and an instrument rating for multiengine aircraft, and must successfully complete formal ground and flight training for a Cessna T337GP at a school acceptable to the Company, and must have completed 10 hours of dual instruction in a Cessna T337GP with a Certificated Flight Instructor who meets all the requirements of the Additional Pilot Clause. Up to 5 hours of the required dual instruction may be accomplished in a full motion simulator.

The formal school requirement shown above must be completed by 5/20/2018 in order for Timothy Neubert to remain an approved pilot.

No coverage for Bodily Injury to Passengers applies while Timothy Neubert is at the controls of N1ZR, until Timothy Neubert has completed the requirements shown above and logged 15 total hours in a Cessna T337GP.

\* \* \*

VIII. EXCLUSIONS

**This Policy does not apply under any coverage:**

\* \* \*

B. when the aircraft is operated by persons who are not specifically named as a pilot on the declarations page, or in any endorsement to this policy; or, who do not meet all of the requirements of the Additional Pilot Clause, if applicable; or when the aircraft is operated by any pilot who is not in compliance with the requirements of FAR 61.56, (Flight Review); or, is not in compliance with the requirements of FAR 61.23, (Medical Certificates: Requirement and Duration); or is not certificated for the make and model being flown and currently rated for the flight involved.

(Doc. 107-1 at 7-25).

On or around March 11, 2019, LAU, through coverage counsel, rendered its coverage determination to Plaintiff, concluding that, among other things, Neubert failed to meet the Special Conditions of the Policy that required him to obtain a multiengine rating and an instrument rating for multiengine aircraft prior to solo flight. (Doc. 107-1 at 28-31). This lawsuit followed.

## II.     PROCEDURAL BACKGROUND

The Court previously granted Defendants' motion to dismiss, dismissing the case with prejudice and concluding that the Policy unambiguously requires that all pilots be certificated for the make and model of the aircraft being flown and rated for the flight involved. (Doc. 17). Because Plaintiff did not satisfy the Policy's requirements, the Court concluded that the Policy does not provide coverage for the damages to the Aircraft as a result of the Incident. (Doc. 17). On a motion for reconsideration, the Court granted Plaintiff leave to amend in an abundance of caution if Plaintiff "can allege that Neubert had obtained the requisite multiengine rating and instrument rating for multiengine aircraft at the time of the [I]ncident." (Doc. 27). The Court further noted that if "Plaintiff cannot assert those allegations, Defendant will still be entitled to dismissal with prejudice." (Doc. 27). In the Amended Complaint, Plaintiff alleges that Neubert "had a multi-engine rating for the type required by the FARs for the Aircraft, and instrument rating for multiengine aircraft." (Doc. 29, ¶ 42).

Defendants then filed their initial motion for summary judgment, which the Court denied, finding genuine issues of material fact as to whether Neubert satisfied the Policy's requirements to cover the damages to the Aircraft as a result of the Incident. (Doc. 93 at 8-9).

Following this ruling, the Court granted Defendants' motion to compel production of the FAA records, which have now been produced. The FAA's Notice of Proposed Certificate

Action dated May 7, 2019, stated in pertinent part that Neubert "Held a Private Pilot Certificate with Airplane Single Engine Land Rating;" the Aircraft "is a multi-engine land airplane;" and that Neubert appears to have violated *inter alia* regulation 14 CFR § 61.3(e), which requires that a pilot be rated (on his pilot certificate) for the aircraft being flown if acting as pilot in command and flying under IFR. (Doc. 107-2 at 54-56). [4] On July 6, 2020, the FAA issued a 60-day Order of Suspension (pursuant to a settlement agreement between the FAA and Neubert) containing the same conclusions regarding Neubert's licensure and the Incident. (Doc. 107-2 at 57-59).

Defendants then filed a renewed motion for summary judgment (Doc. 107) and Plaintiff filed a cross-motion for partial summary judgment (Doc. 130). The parties have also filed motions to exclude experts. (Docs. 106, 122).

### III.  LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries her burden by showing that there is an absence of

---

[4] 14 CFR §61.3(e) provides: "no person may act as pilot in command of a civil aircraft under IFR or in weather conditions less than the minimums prescribed for VFR flight unless that person holds . . . the appropriate aircraft category, class, type (if required), and instrument rating on that person's pilot certificate for any airplane . . . being flown."

The FAA stated that it appeared Neubert had also violated:

14 C.F.R. § 91.103(a) in that a pilot in command shall, before beginning a flight, become familiar with all available information concerning that flight, including for a flight under IFR, the fuel requirements and alternatives available if the planned flight cannot be completed; and

14 C.F.R. § 91.151 (a) in that no person may begin a flight in an airplane under VFR conditions unless there is enough fuel to fly to the first point of intended landing and, assuming normal cruising speed, during the day, to fly after that for at least 30 minutes.

evidence supporting the non-movant's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006). Affidavits submitted in relation to a summary judgment motion must be "based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence." *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314–15 (11th Cir. 2011).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents,* 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir. 1996).

### IV.  DISCUSSION

In their cross-motions for summary judgment, the parties have offered dueling interpretations of the Policy and arguments as to whether it covers the damages to the Airplane. "Under Florida law, '[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage.'" *Zodiac*, 542 Fed.Appx. at 848 (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007)).[5] "If the language used in an insurance policy is plain and unambiguous, a court

---

[5] As previously noted by the Court, there is no dispute that Florida law applies to the interpretation

must interpret the policy in accordance with the plain meaning of the language so as to give effect to the policy as written." *Id.* (quoting *Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.*, No. SC12-905, 2013 WL 3332385 (Fla. July 3, 2013). And fundamentally, "courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'" *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 942 (Fla. 1979)).

The analysis must start with the Court's earlier ruling on Defendants' initial motion for summary judgment, which the Court denied and explained as follows:

> Neubert is identified as a "Named Pilot" in the Policy. "Named Pilot(s)" and "Additional Pilot[s]" are required, in relevant part, to "be certificated for the make and model being flown and must be currently rated for the flight involved, unless otherwise stated." The Special Conditions provision, which applies specifically to Neubert, states that "[p]rior to solo in the NIZR, Timothy Neubert must have obtained a multiengine rating and an instrument rating for multiengine aircraft." The Policy also excludes coverage when the Aircraft is operated by any pilot who is not "certificated for the make and model being flown and currently rated for the flight involved."
>
> Plaintiff contends that Defendants failed to establish that Neubert did not comply with the Special Conditions provision. According to Plaintiff, the Policy does not expressly require that Neubert obtain multiengine rating *on his pilot certificate* as is required under the "Additional Pilots" provision. Rather, Plaintiff contends that the provision is ambiguous and subject to a reasonable interpretation that Neubert was covered (1) while he was a student pilot conducting solo multiengine training with an endorsement from a flight instructor under FAR 61.87, or (2) if he received the required training for multiengine land rating and was endorsed by an authorized instructor under FAR 61.31(d)(2) with a multi-engine rating. It is undisputed that Neubert's pilot certificate is for "airplane single engine land; instrument airplane" and that the Aircraft is a multiengine

---

of the Policy. (Doc. 93 at 7).

>aircraft. Plaintiff admits that Neubert "had a single engine rating and a transitional multi-engine limited to center-line thrust rating for solo fight from an authorized instructor pursuant to 14 FAR. Section 61.31(d)(2)." (Doc. 57-3). Neubert received an endorsement in his pilot logbook from Certified Flight Instructor Nathan Gary, certifying that Neubert "received training to qualify for solo flying" and that he "meets the applicable requirements of 61.87e and is proficient to make solo flights in a C-337P." But, records from the FAA's Department of Transportation pertaining to an investigation of the Incident state that Neubert was "engaged in multi-engine training but the endorsements he held were not sufficient for the type of flying he had been conducting" and that he was "not rated for aircraft." (Doc. 89-1, p. 5). Accordingly, the Court concludes that, at this stage of discovery, the record contains genuine issues of material fact as to whether Neubert satisfied the Policy's requirements to cover the damages to the Aircraft as a result of the Incident.

(Doc. 93 at 8-9).

In their current motions for summary judgment, the parties disagree as to the scope of the Court's initial ruling. Defendants contend that the Court already concluded that the Policy is unambiguous (Doc. 107 at 14-15), while Plaintiff continues to argue that the Policy is ambiguous, and that certain provisions do not apply to Neubert. (Doc. 130 at 13-18). Neither party is entirely correct. The Court clearly determined that both the Special Conditions provision and the "All Pilots" clause[6] apply to Neubert.[7] And while the Court addressed Plaintiff's argument that the Special Conditions provision is ambiguous, it did not make any specific finding regarding ambiguity.

---

[6] The "all-pilots" clause provides that "all pilots . . . must be certificated for the make and model being flown, and must be currently rated for the flight involved, unless otherwise stated."

[7] Likewise, in the Court's ruling on Defendants' motion to dismiss, the Court held that "the plain and unambiguous terms of the Policy require that all pilots be certificated for the make and model being flown and that Mr. Neubert, prior to operating the N1ZR solo, "must have obtained a multiengine rating and an instrument rating for multiengine aircraft." (Doc. 17 at 6). On reconsideration, the Court confirmed that both provisions apply to Neubert and that the provisions are not in conflict with each other. (Doc. 27 at 4-5).

Now, after reviewing the record, the undersigned finds that the Special Conditions provision is unambiguous and that Neubert failed to meet the requirements of the Special Conditions provision.

Pursuant to the plain terms of the Special Conditions provision, prior to flying solo in the Aircraft, Neubert was required to (1) obtain a multiengine rating and an instrument rating for multiengine aircraft; and (2) successfully complete formal ground and flight training for a Cessna T337GP at a school acceptable to the Company; and (3) have completed 10 hours of dual instruction in a Cessna T337GP with a Certificated Flight Instructor who meets all the requirements of the Additional Pilot Clause. Up to 5 hours of the required dual instruction may be accomplished in a full motion simulator.

There is no dispute that Neubert complied with the latter two requirements. Plaintiff took a training course approved by LAU entitled "Initial Transition Training and Instrument Flight Rules Recurrent Training for the Cessna C337 Skymaster at Recurrent Training Center (RTC) in Tampa, Florida. (Doc. 124-7, Declaration of Timothy Neubert at 37-38). He completed the formal school training on April 24, 2018 and sent notification to LAU. (Doc. 124-1, Deposition of Timothy Neubert at 104:1-18). Neubert also completed 10 hours of dual-flight training with Certified Flight Instructor Nathan Gary spread over 8 flights. (Neubert Depo at 25:1-26:2).

There is, however, disagreement as to the first requirement that Neubert had to obtain a multiengine rating and an instrument rating for multiengine aircraft prior to flying solo. Federal aviation regulations specifically identify categories of ratings that are placed on a pilot's certificate, including "airplane class ratings" for "single-engine land" and "multiengine land." 14 C.F.R. § 61.5. It is undisputed that at the time of the Incident, Neubert only had a

single engine land rating and did not have a multiengine rating. While this would appear to be dispositive of the issue, Plaintiff argues that the phrase "multiengine rating" is ambiguous, and susceptible of interpretation in favor of coverage, i.e., that Neubert's pilot certificate together with the CFI's endorsement to fly solo for training purposes was a "multiengine rating." (Doc. 135 at 19). This argument is unavailing.

Plaintiff does not suggest that the endorsement itself is a multiengine rating, and clearly it is not. Indeed, Plaintiff's own expert testified that the endorsement was not a multiengine rating, nor equivalent to a rating, but rather "a tool to allow training in the airplane." (Doc. 124-2, Deposition of Richard Vandam at 38:10-39:25, 72:14-19). Likewise, Plaintiff's expert agreed that endorsements provided by a flight instructor during training are for the limited purpose of allowing the student to gain experience and skills and that the "endorsement in this case did not constitute any sort of rating and did not constitute any rating issued by the FAA." (Doc. 105-1, Supplemental Expert Report of Kathleen A. Yodice, at 6).

Moreover, even if the endorsement authorized Neubert to conduct solo training, it did not alter, or render ambiguous, the Policy requirement that Neubert must first obtain a multiengine rating to do so. Contrary to Plaintiff's contention, Neubert was not required to perform solo flight training to obtain a multiengine rating.[8] And if Neubert needed more

---

[8] Plaintiff points to 14 C.F.R. § 61.109 (b) which provides that "a person who applies for a private pilot certificate with . . . multiengine class rating must log at least .. . .10 hours of solo flight training in the areas of operation listed in § 61.107(b)(2) of this part. This argument, however, is misplaced because for pilots who already possess one rating (Neubert had single-engine rating) and who wish to receive an additional rating (Neubert wished to obtain multiengine rating), the requirements of 14 CFR § 61.63(c) and not 14 CFR §§ 61.107 or 61.109 are applicable. *See* Beard, FAA Office of Chief counsel Opinion, Legal Interpretation re: Section 61.3(d) solo endorsement requirements for additional category and/or class ratings (January 9, 2013) (Section 61.63 contains requirements for pilots who hold a higher (than student) level pilot certificate and are seeking an additional airplane class rating). Section 61.63(c) does not require solo flight training.

flight experience before his check ride, he could have continued to dual train with a properly rated pilot.[9] By choosing to fly solo, without first obtaining a multiengine rating, Neubert failed to meet the unambiguous Special Conditions of the Policy, and the endorsement does not change this conclusion because it did not convey the requisite multiengine rating.

The Court cannot rewrite the unambiguous terms of the Special Conditions upon which the parties agreed, simply because Neubert engaged in solo training that was permissible under the regulations, but not under the Policy. Accordingly, Defendants properly denied coverage under the Policy for damages to the Airplane caused by the Incident. *See e.g., Ranger Ins. Co. v. Kovach*, 63 F. Supp. 2d 174, 181 (D. Conn. 1999) ("The majority view is that the insurer is entitled to rely on a policy provision that unambiguously makes coverage dependent on the pilot of the aircraft meeting particular experience standards"); *Ideal Mut. Ins. Co. v. C.D.I. Constr., Inc.,* 640 F.2d 654, 660-61 (5th Cir. 1981) (applying Florida law, affirming judgment for insurer where policy required that pilot hold FAA ratings for the flight and the pilot lacked the required FAA ratings).

---

Section 61.63(c) requires that any person applying for an additional class rating (1) "Must have a logbook or training record endorsement from an authorized instructor attesting that the person was found competent"; (2) "Must pass a practical test" [known as a check ride]; and (3) "Need not meet the specified training time requirements prescribed by this part that apply to the pilot certificate for the aircraft class rating sought. . . ." 14 C.F.R. § 61.63.

[9] According to Neubert, prior to buying the Aircraft, he had completed formal classroom multiengine training and was signed off to do a multiengine check ride, which he was unable to complete due to a technical problem with his pilot's certificate. (Neubert Depo at 29:1-8). Plaintiff never rescheduled the check ride. Neubert claims that his subsequent training with CFI Gary was more specific than the normal multiengine training and would result in a listing on his license for "multiengine centerline thrust." (Neubert Depo at 29:19-30:3). Neubert concedes that if he would have gone and received his multiengine check ride he would have been eligible to fly the Aircraft—he did not need the additional certification for centerline thrust airplane—nor did the Policy require it. (Neubert Depo at 53:10-24).

For the reasons stated above, Defendants' motion for summary judgment (Doc. 107) should be granted, Plaintiff's motion for partial summary judgment (Doc. 130) should be denied, and declaratory judgment should be entered in favor of Defendants as to Count I of the Amended Complaint.

Given this conclusion, the Court need not address the pending motions to exclude expert witnesses (Docs. 106, 122), because the experts' opinions do not impact the ruling. As discussed above, the parties' experts agreed that the endorsement was not a multiengine rating and they offered no other opinion that is relevant to the Court's determination that Neubert failed to meet the requirements of the Special Conditions. Accordingly, the motions to exclude expert witnesses (Docs. 106, 122) should be terminated as moot.

Recommended in Ocala, Florida on October 21, 2021.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy